**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No. 3:22-cv-01389 |
| Plaintiff, | ) Hon. James G. Carr |
| v. | ) |
| AXIS LED GROUP, LLC, et al., | ) |
| Defendant. | ) |

**DEFENDANTS MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER, ENTRY OF PRELIMINARY INJUNCTION AND FOR WITHDRAWAL OF STIPULATED FINAL JUDGEMENT**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................. ii

TABLE OF AUTHORITIES ........................................................................................... iii

MOTION FOR TEMPORARY RESTRAINING ORDER ................................................ 1

MEMORANDUM IN SUPPORT OF ............................................................................... 4

DEFENDANTS' MOTION FOR PRELIMINARY INJUNCTION ................................... 4

I.      STATEMENT OF FACTS ..................................................................................... 4

II.     The Court Should Grant a Temporary Injunction Requiring the FTC to Revise its August 5, 2022 Press Release and to Post it On Any Blog or Other Social Media Controlled by the FTC. ........................................................................................ 6

        A.      Defendants are Likely to Succeed on the Merits. ....................................... 6

        B.      Defendants Will Suffer Irreparable Harm. ................................................. 9

        C.      The United States Will Not Be Harmed if the Injunction is Granted. ........ 10

        D.      The Granting of an Injunction is in the Public Interest. ........................... 10

        E.      The Posting of a Bond is Unnecessary. .................................................... 13

III.    The Court Should Not Sign the Stipulated Order. ............................................... 13

# TABLE OF AUTHORITIES

**Case Law**

*Basicomputer Corp. v. Scott,*
    973 F.2d 507 (6th Cir. 1992) ................................................................................ 9

*Economou v. Physicians Weight Loss Ctrs. of Am.,*
    756 F. Supp. 1024 (N.D. Ohio 1991) .................................................................... 9

*EEOC v. Laroy Thomas, Inc.,*
    2007 U.S. Dist. LEXIS 118766 (E.D. Tex. 2007) .................................................. 8

*EEOC v. Sundance Inc.,*
    2009 U.S. Dist. LEXIS 151477 (E.D. Mich. 2009) ............................................ 3, 6

*See FTC v. Credit Bureau Center,*
    937 F.3d 764 (7th Cir. 2019) ................................................................................. 7

*FTC v. Cyberspace.com, LLC,*
    453 F.3d 1196 (9th Cir. 2006) ............................................................................... 7

*FTC v. Stefanchik,*
    559 F.3d 924 (9th Cir. 2009) ................................................................................ 7

*In re Eagle-Picher Indus., Inc.,*
    963 F.2d 855 (6th Cir. 1992) ............................................................................ 6, 12

*KindHearts for Charitable Humanitarian Dev., Inc. v. Geithner,*
    676 F. Supp. 2d 649 (N.D. Ohio 2009) ................................................................. 9

*Med. Shoppe Int'l v. S.B.S. Pill Dr., Inc.,*
    336 F.3d 801 (8th Cir. 2003) ................................................................................ 9

*Removatron Int'l Corp. v. FTC,*
    884 F.2d 1489 (1st Cir. 1989) ............................................................................... 7

*United States v. Hooker Chemical & Plastics Co.,*
    607 F. Supp. 1052 (W.D.N.Y. 1985) ...................................................................... 6

**Rules**

Fed. R. Civ. P. 65 ............................................................................................................ 1

**MOTION FOR TEMPORARY RESTRAINING ORDER**

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Defendants Axis LED Group, LLC, ALG-Health (both called "ALG" for purposes of this motion) and Adam Harmon respectfully file this Motion and request this Court to enter a Temporary Restraining Order and enter a Preliminary Injunction affirmatively requiring and directing the United States of America to remove a Press Release issued on August 5, 2022 stating that Defendants lied to the public about Made in USA products.  In fact, Defendants hotly disputed and denied these allegation but made a business decision that it would cost far more to defend the allegations than to enter into a Stipulated Judgment (also referred to as the "Consent Decree").  **Exhibit A**, Harmon Dec. ¶ 7 Counsel's limited review on LEXIS does not reveal any cases invariably requiring a district court to enter a Stipulated Judgment or a Consent Decree where, as here, Defendants withdraw their consent based on events occurring <u>after</u> signing the Stipulation.  This Court has broad discretion to assure that Defendants are not destroyed financially by entering into a settlement with the FTC.  Under the unique circumstances of this case, withdrawal from an unsigned Stipulated Judgement should be allowed.

The Consent Decree specifically provided neither Defendants admitted or denied the allegations as to liability and admitted only facts for jurisdictional purposes. Defendants agreed to the Consent Decree, but the FTC issued the Press Release indicating the Defendants were "Lying About Products Being Made in the USA and Government Certified."  **Exhibit B**, Cochell Dec. Exh. 1. This was done in bad faith to deprive Defendants of the benefit of their bargain because Agency officials <u>failed to tell the public that liability was **not** admitted and portrayed all the allegations as being true, without clearly telling the public that Defendants had denied liability throughout negotiations and</u>

1

did not admit to the allegations. Ironically, the very agency charged with enforcing laws against misrepresentation misled the public by omitting facts to all the public to understand the context and status of this case. The DOJ filed the Complaint and the FTC issued its Press Release several days later. Undoubtedly, the Agency intends to file *another* Press Release if and when the Court enters the Consent Order.

This case was premised on claims made by three disgruntled managers who were fired or asked to leave Defendants' employ. **Exhibit A**, Harmon Dec. ¶ 5. They opened up a competing business and then contacted the FTC to make complaints that were patently untrue, some of which appear to be time barred. **Exhibit A**, Harmon Dec. ¶ 5. Indeed, Adam Harmon relied on one of the disgruntled managers (Feeney) to do the marketing for ALG. *Id* at ¶ 5

An injunction directing the FTC to remove the Press Release from its website should be issued because the Defendants have suffered irreparable harm or a threat of irreparable harm to ALG's financial future. Given agency immunity against defamation complaints, there is no damages remedy against the FTC. 28 U.S. Code § 2680. There has been a considerable number of calls, by at least two news organizations as well as Defendants' customers, expressing concern and demanding a response to the Press Release. Customers with contracts may potentially use this Press Release as a reason for terminating ongoing contracts or not paying on their contracts. **Ex. A**, Harmon Dec. ¶10. It is in the public interest to stop the FTC from issuing misleading press releases after entering into settlements with Defendants when there is no admission of liability, thus undermining the settlements and wrongfully harming Defendants' reputations. Thus, Defendants request the Court grant a TRO and direct the FTC to remove the Press Release pending further proceedings.

<u>Defendants also withdraw their consent from the Stipulated Order and ask the Court to deny entry of the Stipulated Order</u>. Defendants would rather spend whatever funds they have to fight these allegations where, as here, the FTC offered terms that represents defense costs, and which did not admit liability. **Exhibit A**, Harmon Dec. ¶¶ 7-9. In an EEOC case, the district judge sanctioned the FTC lawyers from reneging on a settlement agreement by ignoring material provisions of that agreement. *See EEOC v. Sundance Inc.*, 2009 U.S. Dist. LEXIS 151477, at *6 (E.D. Mich. 2009), (court sanctioned EEOC lawyers for breaching settlement agreement reached at settlement conference, subsequently retracted by the FTC which issued a Press Release violating the Settlement Conference Agreement regarding it Press Release; parties continued discovery).[1] When the FTC blatantly undermines a Settlement, it discourages other litigants to refuse to enter into an agreement with the FTC because the agency officials cannot be trusted.

Defendants entered into the Stipulated Order with the understanding that the FTC would issue a Press Release upon entry of the Order and not before. Customers understand that a Consent Order that does not admit liability to the allegations is a business decision to settle for defense costs and to avoid the extreme costs of litigation, which can cost in excess of $350,000 at the trial level. **Exhibit A,** Harmon Dec. ¶ 7. Adam Harmon made a business decision to avoid the staggering costs of litigation and denied the allegations during discovery. *Id*.

---

[1] In fairness to the DOJ's Mr. Robinson and the FTC's Ms. Ensor, the decision to issue this Press Release was out of Mr. Robinson's control and, as to Ms. Ensor, the Press Release may have been written and posted by the FTC's Public Affairs Dept. Regardless, the issuance of this Press Release works serious financial harm to Defendants. It should be noted that the Agency is immune from defamation lawsuits. Thus, there is no adequate remedy for Defendants.

# MEMORANDUM IN SUPPORT OF
# DEFENDANTS' MOTION FOR PRELIMINARY INJUNCTION

**I.     STATEMENT OF FACTS**

In or about March 2022, Defendants received a CID request from the Federal Trade Commission (FTC) regarding potential allegations against Defendants. After receiving the CID, Defendants hired counsel, and began collecting documents in order to comply with the CID and cooperate with the FTC's investigation. Defendants provided all documents to the FTC and complied entirely with the FTC's investigation.

After receiving documents from the Defendants, the FTC indicated that it was going to follow through with the filing of a complaint against Defendants. Settlement discussions with the FTC were ongoing from the onset of the investigation. Ultimately, after four months of exchanging documents, zoom conferences with the FTC and their attorneys, and other phone conferences, the Defendants and the FTC came to a settlement in the case that involved the Defendants agreeing to a Consent Decree to be issued by the Court. **Exhibit A,** Harmon Dec. ¶8.[2]

The Defendants had express terms that it wanted the FTC, and later the United States, to agree to if it were to settle this case. The express terms were at Paragraph 4 of the Consent Decree: "Defendants neither admit nor deny any of the allegations in the Complaint, except as specifically stated in this Order.  Only for purposes of this action, defendants admit the facts necessary to establish jurisdiction."  This was also expressed in emails. **Exhibit B,** Declaration of Counsel, Exs. 1 and 2.  The FTC and the Department of Justice ("DOJ") agreed to terms.

---

[2] The facts in this case were also hotly disputed. Defendants have attached declarations of Doug Soper (**Exhibit C**) and Tina Dalton (**Exhibit D**) that lay out some of the key disputes in this case.

4

On August 5, 2022 the United States filed its Complaint and Stipulated Judgment. Dkt. 1. The "ink" was barely dry on the Consent Decree when, on August 9, 2022, the FTC issued a press release regarding the case and posted it on its website.[3] The press release violates the express "no admission of liability" provision signed by between the FTC and Defendants.[4] Anyone reading the Press Release (assuming they read beyond the Banner and first couple of paragraphs), may see that there is a proposed Order. However, the readers are required to go to a separately linked web page and read this document to understand that the case has been <u>settled</u> *without an admission of liability*. Under the FTC's own rules on deceptive marketing, the Press Release is misleading and deceptive because it buries the true status of this case in a different document.

Due to the press release, the Defendants' business has suffered irreparable harm through loss of reputation and good will, whereas the FTC and DOJ have suffered no harm. It is in the public interest to grant the TRO, remove the August 9 Press Release, and require the FTC to post a Revised Press Release and blog notices that provide an accurate picture of the case status.

---

[3] https://www.ftc.gov/business-guidance/blog/2022/08/deceptive-duo-made-usa-falsity-misleading-covid-claims

[4] In pertinent part, the August 9 Press Release states: "ALG and its CEO slapped the Made in USA label on masks that were made overseas, and now they're paying the price," said Sam Levine, Director of the FTC's Bureau of Consumer Protection. "As Americans struggle to obtain safe, authentic personal protective equipment, the Commission will use every tool we have to root out false claims and phony labels."

5

**II. The Court Should Grant a Temporary Injunction Requiring the FTC to Revise its August 5, 2022 Press Release and to Post it On Any Blog or Other Social Media Controlled by the FTC.**

In determining whether to grant a motion for preliminary injunction, the Court should consider and balance the following four factors:

(1) The likelihood of the Defendants' success on the merits;

(2) Whether the Defendants will suffer irreparable injury without the injunction;

(3) The harm to others which will occur if the injunction is granted; and

(4) Whether the injunction would serve the public interest.

*In re Eagle-Picher Indus., Inc.*, 963 F.2d 855, 858 (6th Cir. 1992). Consideration of these four factors weighs strongly in favor of Defendants Motion for Preliminary Injunction against the United States.

**A. Defendants are Likely to Succeed on the Merits.**

Whether a consent decree can move forward turns on whether the decree is fair, resolves the matter, reasonably and consistently with the purposes of the FTC. *See United States v. Hooker Chemical & Plastics Co.*, 607 F. Supp. 1052, 1057 (W.D.N.Y. 1985). In this instance, the FTC's press release on the matter undermines the first factor; that of fairness. The press release issued by the Plaintiff is in violation of express agreements made between the parties at settlement. In short, the FTC filed a *post-settlement* Press Release which totally disregards the Settlement—that Defendants were not admitting liability under the Stipulated Judgment, which expressly denies liability. The Press Release deprives Defendants of the benefit of their bargain and ruins their reputations. In *EEOC v. Sundance Inc.*, 2009 U.S. Dist. LEXIS 151477, at *6 (E.D. Mich. 2009), similar actions by the government and its attorneys were *sanctioned* by the Court. *Id.* In *Sundance*, the Court sanctioned EEOC lawyers for breaching a settlement agreement

6

reached at a settlement conference with a U.S. Magistrate. As in *Sundance*, the FTC entered into a stipulation providing that Defendants did not admit liability and then posted its Press Release that omitted the full truth to the public. This constitutes bad faith.

The FTC knew that Defendants were entering into the Consent Decree—not because they were guilty of violating the FTC Act but to avoid the time and costs of defending this claim against the FTC. The FTC has massive resources, including a staff of over 500 lawyers in its employ. Defendants would not have entered into the Consent Decree if they had known that the FTC would file a Press Release that essentially portrayed the Defendants as having pleaded guilty. The FTC recognizes that their statements can be misleading or deceptive based on the "net impression" left by the statement: "An act or practice is deceptive if first, there is a representation, omission, or practice that, second, is likely to mislead consumers acting reasonably under the circumstances, and third, the representation, omission, or practice is material." *FTC v. Stefanchik*, 559 F.3d 924, 928 (9th Cir. 2009). The misrepresentation can be determined to be a misrepresentation based on the net impression a statement creates. *FTC v. Cyberspace.com, LLC*, 453 F.3d 1196, 1200 (9th Cir. 2006).

It is well established that fine print disclosures do not negate a misleading net impression created by large headlines. *See FTC v. Credit Bureau Center*, 937 F.3d 764, 770 (7th Cir. 2019) (net impression created by larger print overcame smaller print). The Ninth Circuit similarly held, in *Cyberspace.com*, 453 F.3d at 1200-01, that deception caused by a check falsely purporting to be a refund or rebate was not cured by fine print disclosures on the back stating that cashing it signed the consumer up for an ongoing monthly service. *Id*. Further, any disclosure or disclaimer must be "sufficiently prominent

7

and unambiguous to change the apparent meaning of the claims and to leave an accurate impression." *Removatron Int'l Corp. v. FTC*, 884 F.2d 1489, 1497 (1st Cir. 1989).

The Court should carefully examine the text size, placement, and contrast of the headline of the press release in conjunction with the body of the release. Clearly, there is no dispute that the phrase the Defendants were "Lying About Products Being Made in the USA and Government Certified." is conveyed in a large, bold heading at the very top of the press release. Mention of a "proposed Order" was buried near the end of the Press Release and required the public to link to the consent decree. The public was then required to read the "proposed Order" and read through Paragraph 4's "no admission of liability" provision before understanding the true status of this case. There is no question that the FTC was attempting to mislead the public into thinking that Adam Harmon *admitted* to illegal conduct based on the net impression left by its banner headline "FTC Sues Marketer of Personal Protective Equipment and Light Fixtures for Lying About Products Being Made in the USA and Government-Certified."

This case is similar to *EEOC v. Laroy Thomas, Inc.*, 2007 U.S. Dist. LEXIS 118766*2, where the Court held in a *completed* signed consent decree entered by the Court, that:

> While it is true the EEOC never agreed not to issue a press release and while it is true the EEOC is free to keep the public informed of the outcome of its suits, it is also true that the EEOC is not free to exploit its settlements to the detriment of the compromising party. This court cannot point to a specific rule of law as having been violated by the EEOC. <u>But, the court does find the issuance of this particular press release, with its attendant tone, violates the spirit in which the consent decree was entered. For the EEOC to compromise this lawsuit with no admission of liability on the part of defendant, and then to portray a different picture through the use of loaded verbage smacks of gamesmanship.</u> The EEOC is a governmental agency and as such is expected to adhere to a higher standard and the quality of information it reports to the public the court is in no way suggesting that it not be allowed to issue press releases about its work, just that the

8

information released be somewhat balanced in its portrayal of the parties agreement.[5]

There is also no question that two of the Commissioners believed that part of the complaint *exceeded* the FTC's statutory authority:

> The complaint in ALG-Health alleges that defendants violated the MUSA rule with respect to products that were not made in the U.S.A. by both (1) placing labels on products and (2) including "Made in the USA" images in online advertising on their website and social media platforms. We believe that the allegations in the first category fall squarely within our congressionally delegated authority, while the allegations in the second category exceed it.

Statement of Commissioners Noah Joshua Phillips and Christine S. Wilson ALG-Health Matter No. 222 3044 August 9, 2022.

For these reasons, Defendants are likely to succeed on the merits.

### B.    Defendants Will Suffer Irreparable Harm.

Damage to reputation can constitute irreparable harm for which there is no adequate remedy at law. *See KindHearts for Charitable Humanitarian Dev., Inc. v. Geithner*, 676 F. Supp. 2d 649, 654 (N.D. Ohio 2009). *See Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992) ("The loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute."); *Economou v. Physicians Weight Loss Ctrs. of Am.*, 756 F. Supp. 1024, 1039 (N.D. Ohio 1991) (noting that courts have found <u>threats of harm to reputation and customer goodwill</u> to constitute irreparable injury); *see also Med. Shoppe Int'l v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 805 (8th Cir. 2003) ("Loss of intangible assets such as

---

[5] In *Thomas*, the Court denied sanctions on a consent decree that was already entered and approved by the Court.  In this case, the Court has not approved the Settlement Agreement and is in a position to limit the reputational damage done to Defendants.  The Court did admonish the EEOC to refrain from issuing unbalanced press releases in the future.

9

reputation and goodwill can constitute irreparable injury." (internal citations omitted). Here, Defendants have already suffered harm to their reputation and may lose contracts in the future. **Ex. A**, Harmon Declaration. Harmon has received multiple phone calls regarding the press release and customers are expressing concern about their confidence in ALG Health due to the FTC Press Release. *Id*.

### C. The United States Will Not Be Harmed if the Injunction is Granted.

Requiring the FTC to provide a full, balanced disclosure of the case status to the public does not harm the United States of America.[6] The DOJ and the FTC have their case ready to go. Other than the relatively brief delay taken to negotiate the Consent Decree, the United States has not suffered any undue prejudice or harm. The case can move to discovery and ultimately trial.

### D. The Granting of an Injunction is in the Public Interest.

As the agency which is charged with enforcing alleged claims against small businesses and small business owners, the FTC must not be allowed to do an *end run* around a consent decree pending before this court by "trashing" a company and its owners, managers and employees.

Indeed, this Press Release undermines the law of settlements and deprived Adam Harmon and his companies of the benefit of settling pursuant to a Consent Decree. Future lawyers representing FTC clients will refuse to engage in settlements with the FTC because it cannot be trusted to abide by its agreements.

---

[6] While discussing this motion with the DOJ, its counsel suggested that there was no jurisdiction over the FTC's issuance of a Press Release because the FTC is a "third party" to this case. The DOJ, United States of America, represents the FTC, which is an agency of the United States of America. The FTC investigated this case and obtained the Stipulated Judgement. The USA is bound by the actions of its agencies.

10

Granting the TRO will "stop the bleeding" and reduce the harm to Defendants while the Court sorts out the facts and allows the parties full opportunity to brief the matter. A Revised Press Release is attached for the Court's consideration.

Alternatively, the FTC can issue a "Revised Press Release" that corrects the deceptive misimpressions made in the August 9 Press Release. The format would clearly disclose the existence of a settlement that does not admit liability and at least mitigates the potential severity inflicted by the original Press Release. Counsel has drafted the following for the Court's and DOJ's consideration. Notably, the draft follows the format in a $150 million dollar settlement with Twitter.[7]

REVISED PRESS RELEASE[8]

> The Department of Justice, together with the Federal Trade Commission (FTC) announce a settlement and entry of a consent decree that, if approved by the Court, will require Adam Harmon, the owner of Axis LED Group, LLC and ALG-Health LLC, to pay $157,683.37 in civil penalties and establishes stringent regulations on Harmon and his two companies when it comes to labeling products as "Made in the USA." The settlement will resolve allegations that Harmon violated the FTC Act by labeling facemasks and personal protective equipment as Made in the USA.
> In the complaint filed in the U.S. District Court in the Northern District of Ohio, the government alleges that Harmon and his companies violated the COVID-19 Consumer Protection Act, the Made in USA Labeling Rule and the FTC Act by making deceptive claims and labels that their products were made in the USA and that their products would provide superior protection from COVID-19. The complaint claims that Harmon and his companies made these representations through social media posts, marketing materials, and labels.
> Pursuant to the settlement agreement, Harmon and his companies neither admit nor deny the validity of the allegations made by the government.

---

[7] Twitter Agrees with DOJ and FTC to Pay $150 Million Civil Penalty and to Implement Comprehensive Compliance Program to Resolve Alleged Data Privacy Violations | OPA | Department of Justice

[8] The Press Release originally issued on August 9, 2022 failed to completely describe the status of this case. Pursuant to the Court's Order, the FTC revises its Press Release.

Harmon has agreed to settle the government's allegations by agreeing to the following injunction provisions:

- Will not make deceptive U.S.-origin labeling and advertising claims. Harmon and his companies are prohibited from claiming that products are made in the United States unless they can (1) show that the product's final assembly or processing – and all significant processing – takes place in the United States, and that all or virtually all ingredients or components of the product are made and sourced in the United States, or (2) clearly and prominently qualify origin claims to disclose imported content or processing.

- Provide substantiation. The defendants must substantiate all Made in USA and COVID-19-related claims, and refrain from making misleading claims for any products or services they provide.

- Pay civil penalties. The defendants must pay a $157,683.37 civil penalty, which is due immediately. The defendants are also subject to a $2.8 million redress judgment, which is suspended due to their inability to pay. Should the FTC discover that the defendants have misstated the value of any assets or failed to disclose them, the agency will seek to have the suspension lifted and the full judgment due immediately.

The Commission vote to authorize the staff to refer the complaint to the DOJ and to approve the proposed consent decree was 5-0. Commissioners Noah Joshua Phillips and Christine S. Wilson issued a joint concurring statement questioning the legal authority of the FTC to address some of the above claims.  The DOJ filed the complaint and proposed consent decree on behalf of the Commission in U.S. District Court for the Northern District of Ohio.

NOTE: The Commission authorizes the filing of a complaint when it has "reason to believe" that the named defendants are violating or are about to violate the law and it appears to the Commission that a proceeding is in the public interest. Consent decrees have the force of law when approved and signed by the District Court judge.

Protecting consumers and honest businesses from deceptive Made in USA claims is a key priority for the Federal Trade Commission. Over the last year, the agency has brought three other cases in this area, Resident Home, Lions Not Sheep, and Lithionics Battery, LLC. Last August, the Commission voted to finalize the Made in USA Labeling Rule, which enables the Commission to seek civil penalties from companies that make false claims. This is the Commission's second action this year to enforce the rule.

The FTC's Enforcement Policy Statement on U.S. Origin Claims provides further guidance on making non-deceptive "Made in USA" claims.

The Commission is also taking aggressive action to combat COVID fraud. The agency has brought more than a dozen cases against COVID-19 predators under the COVID-19 Consumer Protection Act.

Issuance of the Revised Press Release would allow the Settlement to be consummated.

### E. The Posting of a Bond is Unnecessary.

A district court has discretion to require the posting of a bond. *Moltan Co. v. Eagle-Picher Indus., Inc.,* 55 F.3d 1171, 1176 (6th Cir. 1995). As demonstrated above, Defendants have satisfied each of the requirements for injunctive relief. In light of the wrongful, deceitful and unlawful nature of the United States actions, this Court should grant the relief without requiring Defendants to post a bond. No bond should be required where there is no potential harm to the United States. Defendants respectfully request that the Court enter the preliminary injunction without requiring Defendants to post any bond.

### III. The Court Should Not Sign the Stipulated Order.

Based on counsel's initial review of the cases on proposed stipulations, it does not appear that there is any case law that invariably **requires** a federal judge to enter a "Stipulated Order" where a party to the Order withdraws consent to the Order based on events occurring subsequent to filing of the stipulation. Assuming that the standard for withdrawing consent prior to a Stipulated Order requires good cause, Defendants have made a strong showing that they settled only to avoid astronomical costs and did so with the express condition that the agreement was not an admission of liability. **Exhibit A,** Harmon Dec. at ¶ 7

Withdrawal of the Stipulated Order also is in the interest of justice. In addition to exceeding the scope of its authority (as noted by Commissioners Philips and Wilson), there is a serious question as to whether the FTC should have brought an action where, as here, ALG changed its operations to avoid any potential violations after being contacted

13

by the FTC.  **Exhibit C**, Soper Declaration ¶ 4 (last time a Made in USA was on a box was in November 2021); **Exhibit D**, Dalton Declaration ¶ 4 (since November 2021, as team leader, "The boxes shipped from ALG-Health did not contain Made in USA stickers or marks on the face masks, the packaging, or the outside of the shipping boxes.")

Bad faith by the FTC should not be rewarded.  The FTC entered into a settlement, then issued a Press Release that deprived Defendants of the benefits of that settlement and will likely cause far more loss than a result through trial.  As a result of the post-settlement Press Release, <u>Defendants withdraw their consent and request their case go forward</u>.  If the Defendants are to lose their business and suffer financial destruction, they should have their day in court.

WHEREFORE, Defendants respectfully request the Court to grant the TRO to require issuance of the Revised Press Release, allow the parties fair opportunity to brief the matter and set the matter for hearing on a Preliminary Injunction[9] and motion to set aside the Stipulated Order.

Respectfully submitted,

/s/ Stephen R. Cochell
Stephen R. Cochell
Texas Bar No. 24044255
COCHELL LAW FIRM, P.C.
srcochell@gmail.com
5850 San Felipe, Ste 500
Houston, Texas  77057
(346)800-3500

James P. Silk, Jr. (0062463)
SPENGLER NATHANSON P.L.L.
900 Adams Street

---

[9] Counsel is currently out of the country on vacation to Buenos Aires, Argentina but will be available during Monday, August 16 and 17, 2022, by telephone and possibly by Zoom, and returning the States on August 18, 2022.

14

>Toledo, OH  43604
>(419) 252-6210
>jsilk@snlaw.com
>
>*Counsel for Defendants Axis LED Group, LLC, ALG-Health, and Adam Harmon*

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically this 15th day of August, 2022. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

>*/s/ Stephen R. Cochell*
>Stephen R. Cochell
>*Counsel for Defendants Axis LED Group, LLC, ALG-Health, and Adam Harmon*

15