UNITED STATES DISTRICT COURT
IN THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>AXIS LED GROUP, LLC, *et al.*,<br><br>    Defendants. | Case No. 3:22-cv-01389-JGC<br><br><br><br>HON. JAMES G. CARR |

**UNITED STATES' OPPOSITION TO DEFENDANTS' MOTION
AND MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY
RESTRAINING ORDER, ENTRY OF PRELIMINARY INJUNCTION
AND FOR WITHDRAWAL OF STIPULATED FINAL JUDGMENT**

Plaintiff United States respectfully opposes Defendants' motion for a temporary restraining order ("TRO") and preliminary injunction, which seeks an order requiring the Federal Trade Commission ("FTC") to remove its press release about the filing of this suit from its website and social media, to post a new, revised press release, and to refrain from entering the stipulated order that Defendants previously agreed to. *See* ECF No. 5. Defendants have failed to carry their burden of showing that they are entitled to the extraordinary relief they seek, and the Court should therefore deny their motion.

I.      **Factual and Procedural Background**

On August 5, 2022, the United States filed a complaint against Axis LED Group, LLC, ALG-Health LLC, and Adam Harmon (collectively, "ALG") alleging violations of the FTC Act, the COVID-19 Consumer Protection Act, and the Made in the USA Labeling Rule. *See* ECF No. 1. That same day, the United States filed a proposed Stipulated Order for Permanent Injunction,

Monetary Relief Judgment, and Civil Penalty Judgment ("stipulated order") that was fully signed and executed by the parties, including Harmon, who signed individually and on behalf of the two corporate Defendants. *See* ECF No. 2 at 17. The proposed stipulated order nowhere references a press release or the timing or contents of a press release. *See id*.

On August 9, 2022, the FTC posted a press release about the filings on its website titled: "FTC Sues Marketer of Personal Protective Equipment and Light Fixtures for Lying About Products Being Made in the USA and Government-Certified."[1] *See* Ex. 1 (press release). The subheading states: "Agency Brings Enforcement Actions Under the COVID-19 Consumer Protection Act and the Made in USA Rule." *Id*. The press release accurately describes the complaint's allegations.

On August 16, 2022, ALG sought a TRO and preliminary injunction requiring the FTC to withdraw its press release and post a new, revised press release, and allowing ALG to withdraw from the stipulated order. ECF No. 5. On August 17, 2022, the Court held a remote hearing on ALG's motion and encouraged the parties to meet and confer about the press release. In accordance with the Court's request and in an effort to resolve the matter, the United States offered to issue a revised press release with links to the entire docket, but ALG rejected the United States' proposal. The United States now submits this opposition brief detailing why ALG's motion should be denied.

## II.    Legal Standard

A preliminary injunction is "'an extraordinary and drastic remedy'" that should "'only be awarded upon a clear showing that the [movant] is entitled to such relief.'" *Southern Glazer's*

---

[1] *Available at* ftc.gov/news-events/news/press-releases/2022/08/ftc-sues-marketer-personal-protective-equipment-light-fixtures-lying-about-products-being-made-usa.

*Distribs. of Ohio, LLC v. Great Lakes Brewing Co*., 860 F.3d 844, 849 (6th Cir. 2017)

(quotations omitted). Courts considering motions for TROs or preliminary injunctions generally

weigh four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2)

whether the movant would suffer irreparable injury absent the injunction; (3) whether the

injunction would cause substantial harm to others; and (4) whether the public interest would be

served by the issuance of an injunction." *Id*. at 849 (citation omitted); *Midwest Retailer*

*Associated, Ltd. v. City of Toledo*, 563 F. Supp. 2d 796, 802 (N.D. Ohio 2008) (noting the same

legal standards for TROs and preliminary injunctions). The third and fourth factors "merge when

the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). The movant

for a TRO or preliminary injunction bears the burden of persuasion. *Midwest Retailer*, 563 F.

Supp.2d at 802.

 A movant's failure to satisfy the first factor of likelihood of success "'is usually fatal.'"

*Abney v. Amgen, Inc*., 443 F.3d 540, 547 (6th Cir. 2006); *see Southern Glazer's*, 860 F.3d at 849

(citation omitted) (ordering reversal of a preliminary injunction issued "'where there is simply no

likelihood of success'").

## III. The TRO Factors Weigh Strongly Against Granting Injunctive Relief

 Applying the TRO factors here demonstrates that ALG is not entitled to the extraordinary

relief it seeks. This is especially true because ALG has failed to satisfy the threshold factor of

strong likelihood of success.

### A. ALG Has Failed to Show a Strong Likelihood of Success on the Merits

 ALG has no likelihood of success on the merits for three reasons. First, there is no *legal*

basis for its request for a TRO or preliminary injunction. The FTC's press release is simply not

part of the case before the Court. ALG fails to identify any source of law that FTC's press

release even arguably violates, much less any issue in this case to which the press release is relevant.

Further, ALG never explains how the press release legally entitles it to withdraw from the stipulated order it signed. Although ALG points to a provision of the stipulated order providing that ALG does not admit liability, that provision does not in any way limit what the FTC may say or bar FTC from asserting that ALG is liable. Moreover, "[o]nce concluded, a settlement agreement is binding." *Bostick Foundry Co. v. Lindberg*, 797 F.2d 280, 283 (6th Cir. 1983). And a press release that was not a condition of settlement does not present a legal basis for ALG to withdraw from the stipulated order because the United States has not breached the agreement. As in *Bostick*, ALG had the benefit of counsel, and Harmon signed the stipulation both in his individual capacity and as an officer of the two Defendant companies. Thus, there is no legal basis to permit withdrawal of their consent to the stipulated order.

The cases cited by ALG concerning the press release are inapposite. *EEOC v. Laroy Thomas, Inc.*, concerned a sanctions motion about EEOC's issuance of a press release, not a request for a TRO. 2007 WL 9724354, at *2 (E.D. Tex. Dec. 4, 2007). Further, the *Laroy Thomas* court denied the sanctions motion because the court could "not point to a specific rule of law as having been violated [by the press release's issuance]. *Id*. Similarly, in *EEOC v. Sundance, Inc.*, the defendant sought sanctions—not a TRO—after EEOC breached its explicit agreement to issue a plain vanilla press release that it would show to the defendants before issuance. 2009 U.S. Dist. LEXIS 151477, at *2 & 6 (E.D. Mich. Oct. 26, 2009). Here, unlike *Sundance*, there was never any agreement about the timing or contents of the press release. Thus, neither decision supports ALG's argument that it may withdraw from the stipulated order.

Second, there is no *factual* basis for Defendants' request for a TRO. A key premise of

ALG's argument is that the press release is somehow false or deceptive, but ALG fails to make a plausible case that this is so. The full headline of the press release—which ALG selectively and deceptively quotes—is "FTC Sues Marketer of Personal Protective Equipment and Light Fixtures for Lying About Products Being Made in the USA and Government-Certified." Ex. 1. That headline accurately describes why FTC sued ALG. The press release also repeatedly uses language like: "The FTC charged," "[a]ccording to the complaint," and "the complaint alleges." *See id.* This language is completely accurate and not at all misleading. As the D.C. Circuit explained in *Trudeau v. FTC*, an FTC press release accurately describing the agency's allegations is not rendered deceptive by omission of a statement that "there had been 'no findings or admissions of wrongdoing or liability' with respect to [the defendant]," since the court did "not believe that a reasonable reader could construe the press release as suggesting that there had been such a finding." 456 F.3d 178, 353 (D.C. Cir. 2006). The *Trudeau* court found this particularly true where the online FTC press release "contains a link to the 2004 Final Order." *Id.* Similarly, the FTC's press release here links to the underlying complaint and stipulated order, neither of which contain an admission of liability or wrongdoing, and thus a reasonable person would not read the FTC press release to suggest that ALG admitted liability.

Third, even if there were a legal and factual basis for ALG's contentions, ALG does not state a claim for relief on which it could succeed. A TRO is a remedy, and it can only be sought in connection with a valid cause of action. *See*, *e.g.*, *Goryoka v. Quicken Loan, Inc.*, 519 F. App'x 926, 929 (6th Cir. 2013). ALG did not assert any cause of action in its motion, nor did it file an accompanying complaint asserting a cause of action. Its motion should therefore be denied.

### B.  ALG Will Not Suffer Irreparable Injury Absent the Injunction

ALG has also failed to carry its burden to demonstrate that it will suffer irreparable harm absent an injunction. To meet that burden, ALG must show "that irreparable injury is *likely* in the absence of an injunction." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis in original). But ALG offers only speculation.

ALG claims that it has received press inquiries about FTC's statement, but such press inquiries do not constitute irreparable harm. Even absent a press release, this matter was already public by virtue of being filed in open court, and the public complaint contains allegations that ALG engaged in unfair and deceptive conduct. ALG offers no support for its contention that the press release's description of the complaint's allegations and ALG's settlement of those allegations inflict irreparable harm that may be redressed by ALG's motion.

ALG speculates that it "may" lose customers by virtue of the press release, but it points to no specific facts to support that claim. The assertion by ALG's counsel at the August 17, 2022 hearing—that ALG was suspended by the American Mask Manufacturer's Association due to the press release—fails to concretely link the press release to the likely loss of customers or revenue. *See Fifth Third Bank v. Droskie*, No. 1:18-cv-565, 2018 WL 3458719, at *2 (W.D. Mich. June 4, 2009) (finding irreparable harm argument in support of preliminary injunction unconvincing where plaintiffs did not "demonstrate[] any loss of customer good will"). Thus, ALG has failed to show that it is likely to suffer irreparable harm absent an injunction.

In addition, any alleged harm that might result from the continued posting of the press release on FTC's website has largely already occurred. ALG must show additional irreparable harm that the press release may cause, but it has failed to do so.

### C.  The Balance of Equities and the Public Interest Oppose Injunctive Relief

Finally, the remaining factors strongly favor denying ALG's request for injunctive relief.

First, "any time" the government is "enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (quotations omitted). Here, the FTC has a strong interest in enforcing the FTC Act, the COVID-19 Consumer Protection Act, and the Made in the USA Labeling Rule, and protecting consumers from the harms caused by violations of these laws. The FTC also owes it to the public to share the details of its work and how it is carrying out its mission. *See FTC v. Dotauthority.com, Inc.*, No. 16-62186-cv-Zloch, 2017 WL 3669526, at *1 (S.D. Fla. Aug. 22, 2017) ("FTC's decision to inform the public about this case is expressly authorized by the FTC Act").

As the district court in *Trudeau* explained, "exposing an agency to burdensome and invasive litigation each time a press release differs negligibly from the legal document it describes—or each time the title of the press release allegedly fails to capture fully all of the details of the underlying document—would chill the very publication of agency activity that the law encourages, *see* 15 U.S.C. § 46(f), and the public welfare requires." *Trudeau v. FTC*, 384 F. Supp. 2d 281, 298 (D.D.C. 2005), *aff'd*, *Trudeau*, 456 F.3d 178; *see FTC v. Freedom Commc'ns, Inc.*, 966 F. Supp. 1066, 1070-71 (D. Utah 1997) ("the court should be hesitant to restrain the Government in speaking out about matters of public concern absent some very strong showing of inappropriate harm"). In this case, ALG's demand that the Court or ALG rewrite the FTC's press release (thus putting words in the FTC's mouth) would have a particularly chilling effect on the FTC, would effectively grant ALG complete relief under the guise of preserving the status quo, and would create a dangerous precedent for future enforcement actions and settlements.

Second, ALG's demand to withdraw from the stipulated order would also harm the public interest. "[P]ublic policy favors settling cases without litigation, and settlement agreements should be upheld whenever it is equitable to do so." *Rusiecki v. City of Marquette*, No. 02-1888, 64 Fed. Appx. 936, 938 (6th Cir. 2003). Here, there is no fraud or mutual mistake that would warrant ALG's withdrawal from the settlement. *See id*. Thus, this factor also weighs against ordering injunctive relief.

## IV.    Conclusion

For the foregoing reasons, the United States respectfully asks the Court to deny ALG's motion for a TRO and preliminary injunction.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Attorney General
Civil Division

ARUN G. RAO
Deputy Assistant Attorney General

MICHELLE M. BAEPPLER
First Assistant United States Attorney
Northern District of Ohio

s/Brendan F. Barker
BRENDAN F. BARKER (IL: 6299039)
Assistant United States Attorney
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3795
(216) 522-2404 (facsimile)
Brendan.Barker@usdoj.gov

GUSTAV W. EYLER
Director
Consumer Protection Branch

LISA K. HSIAO
Assistant Director

s/ Matthew A. Robinson
MATTHEW A. ROBINSON
ELLEN BOWDEN MCINTYRE
Trial Attorneys Appearing
Pursuant to 28 U.S.C. § 517
Consumer Protection Branch
U.S. Department of Justice
P.O. Box 386
Washington, DC 20044
matthew.a.robinson@usdoj.gov
Phone: (202) 305-4342
ellen.bowden.mcintyre@usdoj.gov
Phone: (202) 451-7731

Attorneys for Plaintiff
UNITED STATES OF AMERICA

Of Counsel:

**FEDERAL TRADE COMMISSION**

JAMES A. KOHM                          LAURA KOSS
Associate Director                     Assistant Director
Division of Enforcement                Division of Enforcement


s/ Julia Solomon Ensor
JULIA SOLOMON ENSOR
Attorney
Federal Trade Commission
600 Pennsylvania Ave., N.W. Mail Stop CC-
9528 Washington, D.C. 20580
Tel.: 202-326-2377
Fax: 202-326-3197
jensor@ftc.gov